# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | CAUSE NO.: 2:10-CV-123-TLS |
| ) | |
| ROBERT H. HILL, *et al.*,   ) | |
| ) | |
| Defendants.   ) | |

## OPINION AND ORDER

On March 17, 2010, Westfield Insurance Company filed a Complaint for Declaratory

Judgment [ECF No. 1] against Defendants Robert Hill, Mildred Hill (the Hills), and Jane Roe,

individually and as the Next Friend and Legal Guardian of John Doe, a minor. Westfield filed

this declaratory action after the Hills requested that it defend and indemnify them pursuant to an

insurance policy that Westfield issued to the Hills for a property located in LaPorte County,

Indiana. The Hills had been sued by John Doe by his Next Friend and Legal Guardian Jane Roe

in LaPorte Superior Court (the Lawsuit). The Lawsuit alleges that the Hills' negligent failure to

supervise, inspect, and maintain their lake home property in a safe condition during social events

at the property caused Doe and Roe to sustain injuries when Mark Comford, an individual

attending these social events, sexually molested Doe.

Westfield is not a named party in the Lawsuit, but is currently defending the Hills

pursuant to a full and complete reservation of rights. In a Motion for Summary Judgment

Against Defendants [ECF No. 34], filed on January 4, 2011, Westfield requests that this Court

declare that it has no duty under the insurance policy to defend the Hills or to indemnify the Hills

against the Lawsuit. In response, the Hills maintain that Westfield has an obligation to defend

and indemnify them against the Lawsuit because Roe makes an allegation that an assault and

battery occurred on their property, that the Hills were unaware of Comford's history or actions, and they purchased insurance for protection from unknown and unforseen events that could take place on their property. Roe, in a separate brief in response to Westfield's Motion for Summary Judgment, also argues that the Westfield policy provides coverage.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure state that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56.1(a) (stating that the movant must provide a "Statement of Material Facts" that identifies the facts that the moving party contends are not genuinely disputed). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56.1(b) (directing that a  response in opposition to a motion for summary judgment must include "a

section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary"). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp*., 200 F.3d 485, 492 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Shepherd v. Slater Steels Corp*., 168 F.3d 998, 1009 (7th Cir. 1999). *See also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

## STATEMENT OF FACTS

The facts of this case are undisputed. Although the Hills and Roe state in opposition to summary judgment that they have no knowledge of certain facts cited by Westfield, and therefore deny them, they do not "cit[e] to particular parts of materials in the record" in support of any claim that a fact is genuinely disputed, nor do they show that the materials cited by Westfield "do not establish the absence or presence of a genuine dispute, or that [Westfield] cannot produce admissible evidence to support the fact[s]." Fed. R. Civ. P. 56(c)(1). Accordingly, the Defendants have not pointed to admissible evidence in the summary judgment record that creates a genuine issue of material fact, and the Court may consider the facts cited by

Westfield "undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). The remaining

question, then, is whether the undisputed facts presented by Westfield entitle it to judgment as a

matter of law. *See* Fed. R. Civ. P. 56(e)(3).

## A.    The Underlying Lawsuit

The claims of John Doe by his Next Friend and Legal Guardian Jane Roe against the

Hills are set forth in the Fourth Amended Complaint at Law (the Complaint), which was filed in

La Porte Superior Court No. 1.[1] The Complaint alleges that Comford sexually molested Doe on

numerous occasions from 2003 until July 2007 at various locations, including at the Hills' lake

home in Rolling Prairie. Roe alleges that this molestation caused injury to Doe and emotional

distress to both Doe and to Roe herself. Doe was invited to the lake home for both church and

non-church related events, and Roe allowed Doe to go to the home believing that the Hills would

supervise their property. In a claim Roe labels as "Premises Liability," she alleges that "[s]olely

as a result of the failure of the Defendants to properly supervise and manage their property, their

failure to warn John Doe and his guardian of the risks of molestation by Mark Comford, John

---

[1] On March 28, 2011, Roe filed a Notice of Filing [ECF No. 48] asking this Court to take judicial notice of her Fourth Amended Complaint at Law, which she noted had been filed in the La Porte Superior Court. The attached Fourth Amended Complaint at Law includes a certificate of service that indicates it was served on counsel on March 18, 2011. The Fourth Amended Complaint does not contain any markings to indicate that it was filed with the La Porte Superior Court or that it was accepted for filing and has become the controlling pleading in the Lawsuit. However, no party has suggested that the Fourth Amended Complaint does not control or that, if it does, the allegations that differ from the previous pleading alters the legal analysis of this declaratory action. The Court notes that the Fourth Amended Complaint adds an adult relative of the Hills as a third defendant who invited Doe to events at the Lake home, expands the dates and occurrences of molestation, and provides specific facts from which Roe contends the Hills should have suspected that Comford was under investigation for child molestation. The outcome of this declaratory action is the same whether the Court relies on the Fourth Amended Complaint or a previous pleading to determine whether Westfield has a duty to defend and indemnify the Hills against the Lawsuit.

Doe suffered from intentional infliction of emotional duress." (Fourth Am. Comp. ¶ 8, ECF No. 48-1.) In a claim for "Negligence" Roe asserts that the Hills failed to properly supervise and provide Doe a safe environment free from sexual molestation, the potential for which they actually or should have recognized as likely to cause serious physical and emotional harm. (Fourth Am. Compl. ¶ 12.a.) The Complaint also makes a separate claim for "Assault and Battery" on grounds that solely as a result of the Hills' failure to properly supervise and manage their home and failure to warn of the risks of assault and battery by Comford, Doe suffered from the intentional infliction of emotional duress when Comford attacked Doe intending to and committing harmful and offensive contact to several parts of his body. (Fourth Am. Compl. ¶ 18.) Roe alleges that because Comford's acts were done intentionally, with malicious intent to injury, and with absolute disregard for Doe's health, safety, and welfare, punitive damages should be awarded.

**B.      The Insurance Policy**

At the time of the events giving rise to the Lawsuit, the Hills had a homeowners insurance policy with Westfield, which had been renewed annually (the Policies). The July 2003 through July 2006 Policies contained personal liability coverage for any claim or suit "brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies." (Aff. of Stephen P. St. Clair, ECF No. 35).[2] The July

---

[2] Stephen P. St. Clair is a claims specialist for Westfield. Attached to his Affidavit are copies of the Policies, which he represents are true and accurate copies of the homeowner policies Westfield issued to the Hills. The Hills do not dispute that the attached Policies accurately state the terms of coverage that were in effect from 2003 until 2009. Instead of citing to the specific pages of the various policies after each recitation of a term of coverage, the Court relies on this initial citation to the location of the Affidavit and its exhibits in the summary judgment record.

2006 through 2009 renewals similarly provided personal liability coverage for a claim or suit

brought against an insured for damages "because of bodily injury or property damage caused by

an occurrence." The Policies define "bodily injury" as "bodily harm, sickness or disease,

including required care, loss of services and death that results." The Policies define property

damage as "physical injury to, destruction of, or loss of use of tangible property."

The Policies contain an exclusion of coverage for personal liability and medical

payments for bodily injury "[a]rising out of sexual molestation, corporal punishment or physical

or mental abuse."


## DISCUSSION

A federal court sitting in diversity applies state substantive law and federal procedural

law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Camp v. TNT Logistics Corp.*, 553 F.3d

502, 505 (7th Cir. 2009). The parties agree that the substantive law applicable to this case is the

law of the State of Indiana. *Camp*, 553 F.3d at 505 (noting that because none of the parties raised

a choice of law issue, the substantive law of the forum state applied). The court's duty is to apply

Indiana law as it believes the highest court of the state would apply it if the issue were presently

before that tribunal. *State Farm Mut. Auto Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001).

"When the state Supreme Court has not decided the issue, the rulings of the state intermediate

appellate courts must be accorded great weight, unless there are persuasive indications that the

state's highest court would decide the case differently." *Id.*

Insurance policies typically impose dual obligations on the insurer—the duty to

indemnify the insured against damages or losses, and the duty to defend against claims for

damages. Because an insurance policy is a contract for insurance, it is governed by the same rules of construction as other contracts. *Briles v. Wausau Ins. Cos.*, 858 N.E.2d 208, 213 (Ind. Ct. App. 2006) (citing *Gregg v. Cooper*, 812 N.E.2d 210, 215 (Ind. Ct. App. 2004)). As with other contracts, their interpretation is a question of law. *Briles*, 858 N.E.2d at 213; *see also Cinergy Corp. v. Associated Elec. & Gas Ins. Servs.*, 865 N.E.2d 571, 574 (Ind. 2007); *Westfield Cos. v. Knapp*, 804 N.E.2d 1270, 1273–74 (Ind. Ct. App. 2004).

In reviewing policy terms, the court construes them "from the perspective of an ordinary policyholder of average intelligence." *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 246–47 (Ind. 2005) (quoting *Burkett v. Am. Family Ins. Group*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000)). If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992); *Newnam Mfg., Inc. v. Transcont'l. Ins. Co.*, 871 N.E.2d 396, 401 (Ind. Ct. App. 2007). "Insurance companies are free to limit their liability, so long as they do so in a manner consistent with public policy as reflected by case or statutory law." *Gheae v. Founders Ins. Co.*, 854 N.E.2d 419, 423 (Ind. Ct. App. 2006). Thus, "[a]n insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability." *Amerisure, Inc. v. Wurster Const. Co., Inc.*, 818 N.E.2d 998, 1002 (Ind. Ct. App. 2004). Moreover, interpretation should harmonize the policy's provisions rather than place its provisions in conflict. *Allgood*, 836 N.E.2d at 247. Where an ambiguity exists, the policy is generally construed in favor of the insured. *USA Life One Ins. Co. v. Nuckolls*, 682 N.E.2d 534 (Ind. 1997). This is particularly the case where a policy excludes coverage. *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind. 1996). However, an ambiguity exists only if reasonable people could disagree about the meaning of the contract's terms. *Beam*

*v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002); *Bosecker v. Westfield Ins. Co.,* 724 N.E.2d 241, 244 (Ind. 2000) ("An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning."). This does not mean that an ambiguity exists simply because an insured and an insurer disagree about the meaning of a provision. *Id.*

The insured is required to prove that its claims fall within the coverage provision of her policy, but the insurer bears the burden of proving specific exclusions or limitations to policy coverage. *See Erie Ins. Group. v. Sear Corp.*, 102 F.3d 889, 892 (7th Cir. 1996) (applying Indiana law). An insurer's duty to defend its insureds against suit is broader than its coverage liability or duty to indemnify. *Walton v. First Am. Title Ins. Co.*, 844 N.E.2d 143, 146 (Ind. Ct. App. 2006); *Trisler v. Ind. Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991). Although an insurance company can limit its duty to defend, *cf. Walton v. First Am. Title Ins. Co.*, 844 N.E.2d 143, 147 (Ind. Ct. App. 2006) (stating that if the pleadings reveal that a claim is excluded under the policy, then no defense is required), an insurer is generally obligated to defend its insured against suits alleging facts that might fall within the coverage of the policy, *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997). The insurer's duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation. *Trisler*, 575 N.E.2d at 1023.

In support of its Motion for Summary Judgment, Westfield argues that is does not have a duty to defend or indemnify the Hills against the Lawsuit for the following reasons: (a) Roe's individual claim for emotional distress upon learning of her son's sexual molestation and assault and battery is not a covered bodily injury; (2) Roe's individual claim for lost wages is not a

covered property damage; and (3) Roe's claims on behalf of Doe are subject to a sexual molestation exclusion set forth in the Policies.

### A.    Roe's Individual Claims do not Constitute Bodily Injury

Westfield argues that the Complaint does not allege that Roe suffered any direct, physical impact to her body as a result of Doe's molestation. Her damages are limited to the emotional distress she suffered as a result of learning that Doe had been molested. Therefore, her claims do not involve a "bodily injury" as defined in the Policies.

Westfield's position is supported by decisions from Indiana's highest court. The Indiana Supreme Court has recognized that bodily injury, when it is defined in an insurance policy as "bodily harm, sickness or disease," includes emotional distress. *See State Farm Mutual Auto. Ins. Co. v. Jakupko*, 881 N.E.2d 654 (Ind. 2008). However, it only includes such damages if they arise from a bodily touching. *Id.* at 659; *State Farm Mut. Auto. Ins. Co. v. D.L.B.*, 881 N.E.2d 665, 666 (Ind. 2008). For example, in *D.L.B.*, the court held that the emotional distress a young boy suffered as a result of witnessing his cousin's accidental death when they were both riding bicycles was not a covered bodily injury because the boy did not suffer bodily impact, force, or harm. 881 N.E.2d at 666. The same is true of Roe's emotional distress injuries. They are, according to her, "a result of her involvement in witnessing John Doe's injuries." (Defs. Doe and Roe Resp. in Opp'n 9, ECF No. 42.) Therefore, they do not meet the definition of a bodily injury.

Roe attempts to avoid this conclusion by arguing that because her Lawsuit states an actionable claim for emotional distress she therefore suffered a bodily injury as defined in the

Policies. However, the case Roe relies upon, *Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind. 1991), stands only for the following proposition:

> When . . . a plaintiff sustains a *direct impact* by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, . . . such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

*Id.* (emphasis added). Under this rule, the plaintiffs in *Shuamber*, a mother and sister who were involved in the same automobile accident that killed their son and brother respectively, were permitted to present their emotional distress claims to a jury. The court reasoned that the mother did sustain a direct impact because she was inside the vehicle when it was struck by another vehicle. *Id.* The mother claimed that she suffered emotional trauma as a result of being involved in the impact and witnessing her son's fatal injuries. The court held that the mother should be allowed to present evidence that her emotional trauma was the result of being involved in the accident, as opposed to being the normal reaction of a mother who tragically lost her son (which would not be recoverable). Likewise, the sister of the fatally injured passenger was directly involved in the impact and if she was "able to prove that she sustained a mental trauma as a result of observing her brother's fatal injury," then "she, too, should recover for that emotional trauma." *Id.*

Roe claims that her emotional distress claims are "substantially similar to those in *Shuamber*." (Defs.' Resp. in Opp'n 8.) This case and *Shuamber* as distinguishable as a matter of law. The critical element of a direct impact like the one the plaintiffs sustained in *Shuamber* is entirely missing; Roe has not alleged any direct physical impact on her by Comford or the Hills. Likewise with regard to whether her injuries fall within the Policies' definition of a bodily

injury, Indiana case law is clear that emotional distress does not constitute a bodily injury as defined in the Policies unless it arises from a bodily touching. *Jakupko*, 881 N.E.2d at 659; *D.L.B.*, 881 N.E.2d at 666.[3] Roe also misses the point when she cites to *Wayne Township Board of School Commissioners v. Indiana Insurance Co.*, 650 N.E.2d 1205, 1210 (Ind. Ct. App. 1995), for the proposition that bodily touching is inherent to child molestation and the resulting emotional injury suffered by the victim of child molestation is bodily injury. Roe notes that the court "found 'pivotal' the fact that the emotional distress claim at issue in that case resulted from bodily contact and therefore concluded the child's emotional distress fell within the definition of 'bodily injury' under the policy." (Defs.' Response in Opp'n 8 (citing *Wayne Township*, 650 N.E.2d at 1210–11).) However, the issue is whether Roe suffered a direct impact from a bodily touching of her, not whether Doe suffered one. Consistent with *Wayne Township* and subsequent Indiana Supreme Court case law, Westfield does not dispute that Doe's injuries fall within the definition of bodily injury. The same is not true of Roe and because she suffered no bodily contact her injuries do not satisfy the definition.

The pleadings disclose that Roe's emotional distress claim is patently outside the Hills' insurance coverage. Accordingly, Westfield is not required to defend the Hills against her cause

---

[3] It is not clear from *Jakupko*, *D.L.B.*, or any other Indiana case this Court could locate whether a physical bodily injury to an insured is required to recover damages for emotional distress caused by witnessing harm to another person, or whether a mere direct impact from the accident, such as the impact realized in *Shuamber*, is sufficient. *See Taele v. State Farm Mut. Auto. Ins. Co.*, 936 N.E.2d 306, 310 n.2 (Ind. Ct. App. 2010) (noting the lack of clarity in the cases discussing the requirement that direct physical impact accompany emotional distress before it meets the definition of bodily injury); *see also Jakupo*, 881 N.E.2d at 662 (Shepard, J., concurring in result) (expressing skepticism in permitting a wholly uninjured (but nevertheless impacted) plaintiff to recover any emotional distress damages as an insured bodily injury). In any event, Roe did not sustain physical bodily injuries or a direct physical impact as a result of Comford's molestation of Doe.

of action.[4]

**B.       Roe's Individual Claims do not Constitute Property Damage**

In addition to providing coverage for bodily injury, the Policies also provides personal liability coverage to the Hills for any claim or suit brought against them for damages because of property damage caused by an occurrence. Westfield argues that Roe has not alleged that she suffered any property damage, and, despite bearing the burden on the issue of coverage, Roe does not respond to this argument. The Court finds that Roe's Fourth Amended Complaint does not refer to any "physical injury to, destruction of, or loss of use of tangible property" as result of the Hills' alleged negligence. Accordingly she has not presented any evidence that the Lawsuit makes a claim for property damage and Westfield is not required to defend and indemnify the Hills against Roe's individual claims.

**C.       The Claims on Behalf of Doe are Subject to the Policies' Sexual Molestation Exclusion**

Roe alleges that the Hills negligently failed to supervise social functions held at their lake house and negligently failed to inspect and maintain the house, or to warn Roe or Doe, which resulted in Doe being sexually molested and physically touched in a harmful manner by another invitee. Whether Doe's claims are excluded from coverage turns on the construction of a provision in the Policies that excludes coverage for personal liability and medical payments for

_____

[4] The Hills responded to Westfield's Motion for Summary Judgment separately from Roe. Their Memorandum of Law in opposition to summary judgment does not address the definition of a bodily injury.

bodily injury "[a]rising out of sexual molestation, corporal punishment or physical or mental abuse."

No Indiana court has ruled on the parameters of this particular exclusion. In support of its position that Roe's negligent supervision claim against the Hills is not covered under the policy, Westfield draws on an Indiana case where the meaning of "arising out of" was addressed in the context of an exclusion. *See Grinnel Mutual Reinsurance Co. v. Ault*, 918 N.E.2d 619 (Ind. Ct. App. 2009). Westfield also points to cases from other jurisdictions where identical, or near identical, sexual molestation exclusions have been construed to disallow claims for negligent supervision and failure to warn resulting from a third party's molestation of a minor in the insured's care or custody.

In *Grinnel*, an Indiana case applying an exclusion that contained the arising out of language, a daycare owner's husband molested a child while the child was in the home as a ward of the daycare business. The child sued the daycare provider for negligently failing to supervise her and prevent her from being molested. The daycare provider's and husband's farm and personal liability insurance policy contained an exclusion for bodily injury arising out of business activities of any insured person. 918 N.E.2d at 622. The court held that the exclusion was not ambiguous and that the injuries the child suffered when she was sexually molested, "arose out of" the daycare's business activities. *Id.* at 626 (noting that it was not disputed that the phrase "arising out of" connotes a causal connection); *see also Moons v. Keith*, 758 N.E.2d 960, 963–64 (Ind. Ct. App. 2001) (holding that arising out of language in uninsured benefits provision of motor vehicle insurance policy required that there be a causal connection or relationship between the vehicle and the injury). Although the improper touching could have occurred in

another setting or place, the child was in the abuser's home solely as a ward of the wife's daycare business and her injuries were, the court held, unambiguously excluded. *Id.* ("We do not see how the causal connection between [the daycare owner's] business activities and [the child's] injuries could be any more direct.").

The ordinary and generally accepted understanding of the arising out of language is connoting a causal connection. Thus, the Court concludes that an ordinary policyholder, reading the clause that excludes from coverage any claim for bodily injury "arising out of sexual molestation," would consider himself without coverage for a claim similar to the claim that Roe is asserting—that sexual molestation caused bodily injury. To borrow from *Grinnel*, the Court does not see how the causal connection between the sexual molestation and Doe's injuries could be any more direct. Regardless of any other contributing causes, without Comford's acts there would be no claim of injury. Notably, the exclusion does not contain any limitation as to who commits the act of molestation or abuse. *See K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 755–56 (Ky. Ct. App. 2005) (noting that an insurance policy excluding damages for bodily injury arising out of any sexual act, sexual molestation, corporal punishment, or physical or mental abuse was not limited to acts committed by its insured). Rather, the exclusion "remove[s] from coverage *an entire category* of injuries; *i.e.*, those arising our of sexual acts and physical or mental abuse." *Id.* at 756 (holding that "[t]his plainly worded exclusion should dispel any expectation of the [insureds] that either was entitled to be defended or indemnified by [insurer] against a claim arising from sexual molestation—regardless of the identity of the actual perpetrator of the sexual offense"); *see also Flores v. AMCO Ins. Co.*, 2007 WL 3408255, at *8 (E.D. Cal. Nov. 15, 2007) (holding that a clause that excluded sexual activity or conduct without

14

reference to whom commits such action was not ambiguous because the absence of such reference reflects that the sexual molestation exclusion applied to anyone (insured or not) and was not based on the identity of the actor); *Metro. Prop. and Casualty Ins. Co. v. Miller*, 589 N.W.2d 297, 300 (Minn. 1999) ("[t]he plain language of the polic[y] provides no coverage for injury in the form of sexual molestation, regardless of whether the injury was caused by an insured or the injury could have been prevented by an insured."). Moreover, a reasonable policyholder would not read in an identity of the actor limitation to the sexual molestation exclusion particularly where, as here, surrounding exclusions are so limited. The Policies included various exclusions that were specifically limited to activity of "an insured." (*See, e.g.*, Policy 12–13, ECF No. 35-1.) In fact, the exclusion just prior to the sexual molestation exclusion stated that personal liability coverage did not apply to bodily injury [w]hich arises out of the transmission of a communicable disease *by an insured*." (Policy 13 (emphasis added).)

The Hills, in their response brief, do not suggest that the clause was ambiguous. In fact, their brief does not even contain a discussion of what is meant by the phrase "arising out of sexual molestation." Although the brief argues that the Hills "would not have contracted for a policy of protection for their property that would preclude damage to an individual that was physically assaulted on their property" (Hills' Mem. of Law 4, ECF No. 41), there is no evidentiary support for an assertion that the Hills "would not have contracted" in this way. There is only the argument of counsel, which is not part of the summary judgment record and is not evidence. *See* Fed. R. Civ. P. 56(c) (explaining the procedure the parties must use to support factual positions); *see also Clifford v. Crop Prod. Servs., Inc.*, 627 F.3d 268, 273 n.6 (7th Cir. 2010) (noting that the argument of counsel is not evidence). More importantly, the subjective

beliefs of the Hills are not relevant to the applicable standard for determining whether an insurance policy provision is ambiguous, which is whether the provision "is susceptible to more than one interpretation and reasonable persons would differ as to its meaning." *Bosecker v. Westfield Ins. Co.,* 724 N.E.2d 241, 244 (Ind. 2000); *see also Eli Lilly and Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985) ("[A]n insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language.").

The Court finds that the exclusion is not ambiguous. Further, Roe's claim for damages against the Hills fits within this exclusion because it alleges bodily injuries arising out of sexual molestation or physical or mental abuse. The fact that the Lawsuit is directed at the Hills' alleged acts of negligence in preventing the molestation as opposed to any allegation that they engaged in acts of sexual molestation themselves does not change the category of injuries and does not take Roe's claims outside the purview of the exclusion. In arriving at this conclusion, the Court is guided by *Property-Owners Ins. Co. v. Ted's Tavern, Inc.*, 853 N.E.2d 973 (Ind. Ct. App. 2006). In *Property-Owners*, a tavern patron consumed four Long Island ice tea drinks in less than two hours and then drove his car head-on into another car and killed the other driver. The personal representative of the deceased driver sued the tavern for, among other claims, negligence and negligent hiring, training, and supervising employees. The tavern's commercial general liability policy excluded coverage for bodily injury for which the insured could be held liable by reason of causing or contributing to the intoxication of any person or furnishing alcoholic beverages to a person under the influence of alcohol. The court held that the liquor liability exclusion precluded coverage for the negligent hiring and supervision claims because they were "inextricably intertwined" with serving alcohol to an inebriated person. In so holding,

16

the court found instructive the "efficient and predominant cause analysis" set out in two Indiana cases: *Wright v. Am. States Ins. Co.*, 765 N.E.2d 690 (Ind. Ct. App. 2002) (holding that an auto-use exclusion in a commercial general liability policy barred coverage for a van owner's alleged negligent hiring of a driver for a day care center); and *Ill. Farmers Ins. v. Wiegand*, 808 N.E.2d 180 (Ind. Ct. App. 2004) (holding that an insurance policy that contained a motor vehicle exclusion did not provide liability coverage for a claim that the insured negligently supervised the entrusted driver of the insured's all-terrain vehicle (ATV) who was injured in an accident). In *Wright*, the court stated that the "efficient and predominating cause of the injuries was [the] use of the van." 765 N.E.2d at 697. The court reasoned:

> Without the use of the van, there would be no lawsuit. [The plaintiffs] are not alleging that [the day care]'s failure to investigate [the employee's]' driving record, or its employment of an incompetent driver with a suspended license was a separate or independent proximate cause of the harm. The immediate and efficient cause of [the children's] injuries and the [plaintiffs'] claims arising from those injuries is [the employee's] use of the automobile.

*Id.* Likewise, in *Wiegand*, the court reasoned that "without the use of the ATV, there would be no claim for negligent supervision." 808 N.E.2d at 191. In so finding, the court followed the majority line of reasoning which holds as follows: where negligent supervision is so inextricably intertwined with the motor vehicle and would not have resulted but for the use of the motor vehicle, the negligent supervision claim is excluded from coverage under the motor vehicle exclusion. *Id.* The court in *Property-Owners* applied this same reasoning to the furnishing alcohol exclusion and the plaintiff's negligence claim. The court reasoned that the gist of the complaint was that a tavern patron consumed a very large amount of alcohol in a short amount of time and that his resultant drunk driving killed another person. In other words, the patron's driving while intoxicated was the efficient and predominating cause of the fatal collision. 853

N.E.2d at 982. Although the plaintiff alleged that the defendants negligently hired, trained, and supervised its employees, the court found that the allegations were not independent of the negligent furnishing of alcohol. "To the contrary, the nuisance and the . . . negligent hiring, training, and supervision are so inextricably intertwined with the underlying negligence that there is no independent act that would avoid" the exclusion. *Id.* at 983. (holding that "creative pleading" could not "hide the reality that the immediate and efficient cause of the injuries was drunk driving precipitated by the negligent service of alcohol").

Applying similar reasoning, the Court finds that even though Roe frames Doe's injuries in the language of negligent supervision and failure to warn, the efficient and predominant cause of Doe's injuries was Comford's sexual molestation and physical abuse. In her Complaint, Roe alleges that solely as a result of the failure of the Hills to properly supervise and manage their property and their failure to warn Doe and his guardian of the risks of molestation by Comford, Doe suffered from intentional infliction of emotional distress. However, other of the Complaint allegations reveal that the Hills' lack of supervision and failure to warn were not the sole cause of Doe's injuries such that it can be said that his injuries did not arise out of sexual molestation. Although the Hills' actions or omissions could have contributed in some way, without Comford's acts, specifically his acts of sexual molestation, there would be no damages, no lawsuit and no negligence claim. There is a clear nexus between Roe's claims against the Hills and Comford's touching such that the claims against the Hills are inextricably intertwined with the acts of sexual molestation. Indeed, the Complaint does not contain a single allegation of tortious conduct against the Hills that is divorced from Comford's actions, and the Complaint does not assert any claim for damages by Roe independent of the injuries caused by Comford's

actions. Accordingly, there are no claims that are sufficiently separate and distinct from the exclusion for bodily injuries arising out of sexual molestation or physical abuse so as to avoid application of the exclusion. Roe's claim against the Hills for negligence is for injuries arising out of Comford's acts of sexual molestation and physical abuse, the efficient and predominant cause of the injuries, which the Policies exclude from coverage.

The Court notes that courts outside Indiana have arrived at similar conclusions when addressing sexual molestation exclusions in insurance policies. For example, a district court in Kentucky (that handles juvenile matters) held that a claim for negligent supervision was subject to a policy's sexual molestation exclusion even though the claim against the insured was for negligently failing to prevent the molestation. *Am. Nat'l Property and Cas. Co v. M.M.*, 2010 WL 3341501 (W.D. Ky. Aug. 24, 2010). Likewise, in *Allstate Ins. Co. v. Bates*, 185 F. Supp. 2d 607 (E.D.N.C. 2000), the court held that whether the insured's alleged negligence contributed to the infliction of the injury did not and could not change the nature of the bodily injury, which was the focus of the exclusion. *Id.* at 612. The *Bates* court clarified that the issue for application of an exclusion for bodily injury arising out of sexual molestation, corporal punishment, or physical or mental abuse was whether the bodily injury arose from sexual molestation, not whether the sexual molestation arose from the insured's failure to warn a minor child that her husband had a propensity to molest children. *Id.* ("The policy unambiguously bars coverage for injuries arising out of sexual molestation, and there is no question that the bodily injury in this case arose out of sexual molestation" not from the defendant's alleged failure in protecting the minor child from the molestation); *see also Famers Alliance Mut. In s. Co. v. Willingham*, 2009 WL 3429768, at *4–5 (N.D. Okla. Oct. 20, 2009) (holding that a sexual molestation exclusion in

an insurance contract applied to a claim of negligence against the molester's wife because it was intertwined with the husband's acts of molestation, which were a necessary cause of the injuries the victim's parents alleged); *Philbrick v. Liberty Mut. Fire Ins. Co.*, 934 A.2d 582, 585 (N.H. 2007) (reasoning that because the language of a sexual molestation exclusion tied the exclusion to the nature of the injury the focus was on whether the alleged harm arose from an act excluded under the policy rather than the cause of action in the complaint). In *Philbrick*, the court held that the exclusion applied because the injury to the Philbrick children and emotional distress for all the plaintiffs originated from or grew out of the sexual molestation even if they were, in a sense, caused by the insured's negligence. 934 A.2d at 586; *see also Am. Commerce Ins. Co. v. Porto*, 811 A.2d 1185, 1196 (R.I. 2002) (applying the exclusion because the family of a molestation victim did not allege any separate, independently caused bodily injuries to the victim resulting solely from the insured's negligence but alleged injuries resulting from an alleged sexual assault). Similarly, in *Nw. G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179, 184 (N.D. 1994), the court held that a sexual molestation exclusion was not ambiguous, and that it applied to the plaintiffs' claim that the operator of a day care negligently failed to prevent her husband from sexually molesting a minor in her care. The plaintiffs attempted to avoid the exclusion by claiming that the injuries giving rise to the lawsuit arose out of the wife's negligence, not sexual molestation, but the court held that the focus of the exclusion was the injury, not the pleaded cause of action. *Id.* Because no liability could attach to the wife absent the husband's acts of molestation, the injuries arose out of sexual molestation. *Id.* Although some courts have arrived at the opposite conclusion, this Court finds the reasoning of the above-cited cases persuasive, particularly given Indiana's treatment of negligent supervision claims in the context of other

exclusions.

Roe argues that *Frankenmuth Mutual Insurance Co. v. Williams*, 690 N.E.2d 675, 678–80 (Ind. 1997), warrants a different outcome. She argues that *Frankenmuth* stands for the principle that an insurance policy exclusion that precludes coverage for intentional or illegal acts does not preclude coverage for the negligent acts of insureds under the same policy. Roe fails to acknowledge that because the intentional acts exclusion at issue in *Frankenmuth* excluded coverage for personal injuries that were "caused intentionally by or at the direction of any insured," 690 N.E.2d at 678, it is more narrowly tailored than the exclusion at issue in the Hills' Policies. The question presented by an intentional acts exclusion is whether a claim of negligence is excludable as an intentional act. The sexual molestation exclusion, as already noted above, is not limited by the identity of the actor and there is no requirement that the insured's liability result from the insured's commission of the prohibited conduct. The question presented by the sexual molestation exclusion is whether a claim of negligence is excludable because the claimed injuries arise out of sexual molestation. The answers to these very different questions highlights why *Frankenmuth's* discussion of the intentional acts exclusion is not applicable to the circumstances of this case and the sexual molestation exclusion. Also, the Court cannot ignore the fact that *Framkenmuth* specifically dealt with collateral estoppel in connection with an admission of negligence. Each of the two Indiana courts to cite to *Frankenmuth* since it was decided more than thirteen years ago have cited it in the context of a collateral estoppel analysis.

A claim for injury arising out of sexual molestation or physical or mental abuse is not a risk that Westfield agreed to insure. Roe's claim that the Hills' negligent ownership, supervision, and management of their property led to Doe's molestation and injury are inextricably

intertwined with this excluded risk. The same analysis and conclusion apply to the allegations in the Complaint of assault and battery because the exclusion includes mental or physical abuse. Moreover, the assault and battery referenced in the Complaint is, in reality, a reference to the same conduct that is characterized by Roe as sexual molestation.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Westfield's Motion for Summary Judgment. The Clerk is directed to enter judgment in favor of Westfield and against the Defendants declaring that Westfield has no duty to defend or indemnify the Hills against the Fourth Amended Complaint filed by John Doe by his Next Friend and Legal Guardian Jane Roe in LaPorte Superior Court, Cause Number 46D01-0911-CT-251.

SO ORDERED on May 12, 2011.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION